**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Integrity Business Partners, LLC,

             Plaintiff,                                Case No. 1:21-cv-162

v.                                          Judge Michael R. Barrett

Autumn Ridge Consulting Inc., et al.,

             Defendants.

**OPINION & ORDER**

This matter is before the Court on the Second Motion for Leave to File an Amended Counterclaim filed by the fifteen corporate Counterclaim-Plaintiffs (collectively, "Sub-Merchants") and one individual Counterclaim-Plaintiff, Gina Stagnitto ("Stagnitto"). (Doc. 84). Worldpay, LLC ("Worldpay") and Fifth Third Bank ("Fifth Third") filed a Response in Opposition. (Doc. 85). Integrity Business Partners, LLC ("IBP") did not file a response, and the time to do so has passed.[1] *See* S.D. Ohio Civ. R. 7.2(a)(2). Sub-Merchants and Stagnitto filed a Reply. (Doc. 87).

I.   **BACKGROUND**[2]

This case is about money spent via credit or debit card payments between August 21, 2020 and August 25, 2020 by customers at Sub-Merchants' online stores. Specifically, this case is about the exact amount of money Sub-Merchants' customers

---

[1] As IBP did not file a response in opposition, the Court will grant Sub-Merchants and Stagnitto's Motion for Leave in all respects as to their proposed Counterclaim against IBP.

[2] For purposes of this Opinion & Order, the Court will accept the factual allegations in the proposed Counterclaim as true and will rely on those allegations herein. However, the Court emphasizes these factual allegations are not yet established—and may never be. *See Doe v. BMG Sports, LLC*, No. 1:20-CV-688, 2022 WL 345178, at *1 (S.D. Ohio Feb. 4, 2022); *see also* (Doc. 84-1) (proposed Counterclaim).

spent in card payments, what fees are properly deducted from that amount under the parties' various card payment processing contracts, to whom that money belongs, and who owes who.

### a. Card Payment Processing Services

A brief overview of the credit and debit card payment processing services at issue in this case is a useful starting point. To accept card payments, a business must first open an account for card payment processing services. (Doc. 84-1 ¶ 31). A business opens such an account by contracting with a member bank of Mastercard,[3] Visa,[4] Discover,[5] American Express and/or other networks (collectively, "Card Brands"). (*Id.* ¶ 31). Such member banks, in turn, have contracts with Card Brands that enable member banks to process credit and debit card payments issued by the Card Brands to purchase goods and services from businesses that contract with member banks for processing services. (*Id.*) As part of member banks' contracts with the Card Brands, member banks must comply, and ensure compliance of any third-party agents, with the rules and regulations of the credit card brands Visa and Mastercard ("Card Brand Rules"). (*Id.* ¶ 33). This process, on the merchant end of card payments, is called "acquiring," and the banks are often referred to as "acquirers." (*Id.* ¶ 31).

Acquirers, in turn, may contract with third party organizations ("service providers") to provide card payment processing related services ("program services") to merchants under the acquirers' sponsorships with the Card Brands. (*Id.* ¶ 32). The Card Brands categorize service providers based on the nature of the program services to be

---

[3] Mastercard International Inc.
[4] Visa Inc.
[5] Discover Financial Services, LLC.

performed. (*Id.* ¶ 34). For example, an acquirer may sponsor a service provider as an Independent Sales Organization that would solicit merchants for payment processing services on the bank's behalf. (*Id.*) Or, as another example, an acquirer may sponsor a service provider as a Payment Facilitator ("PayFac") that would directly contract with sub-merchants[6] as an agent of the acquirer, and give the acquirer records of valid transactions submitted to the PayFac by its sub-merchants, timely pay sub-merchants for transactions submitted to the PayFac by the sub-merchant, and provide recurring education and training to sub-merchants to ensure their compliance with Card Brand Rules. (*Id.*)

Important here, a service provider may perform only the type of program service that it is registered to perform. (*Id.* ¶ 35). So, to perform PayFac services on behalf of an acquirer, a service provider must be registered as a PayFac. (*Id.*) Continuing with the PayFac example, an acquirer is responsible for all acts and omissions of a PayFac and is responsible for ensuring that each PayFac complies with all Card Brand Rules. (*Id.* ¶ 38). A PayFac must pay a sub-merchant for all transactions that the PayFac submits to the acquirer on the sub-merchant's behalf. (*Id.* ¶ 39). This payment obligation is not discharged until the sub-merchant receives payment from the PayFac, regardless of any payment arrangement between the PayFac and the sub-merchant or between the PayFac and the acquirer. (*Id.*)

### b. The Parties

Sub-Merchants are each online businesses that market digital products[7] and require the ability to accept credit and debit card payments over the Internet to conduct

---

[6] Because a PayFac has a "master merchant account," also known as a "master MID," with its acquiring bank, the individual business owners are called "sub-merchants."

[7] *E.g.*, online arcade games, online brain games, online e-books, and digital fitness programs.

business. (*Id.* ¶ 30). Stagnitto provides business-consulting services to each of the Sub-Merchants, and introduced each Sub-Merchant to IBP. (*Id.* ¶ 43).

Fifth Third is a member bank that provides credit and debit card payment processing acquiring services through Worldpay. (*Id.* ¶ 40). Worldpay was formerly named Vantiv, LLC. (*Id.* ¶ 21).

IBP works with online businesses to provide credit and debit card processing services. Prior to contracting with each Sub-Merchant, IBP represented to each Sub-Merchant that IBP was a registered PayFac of Worldpay. (*Id.* ¶ 30).

### c. Agreements between the Parties

In September 2019, IBP and Worldpay entered into a Payment Facilitator Merchant Agreement under which IBP obtained a PayFac registration and master merchant account from Worldpay. (*Id.* ¶ 41). IBP was then able to use its PayFac registration to aggregate payment transactions from sub-merchants—including but not limited to Sub-Merchants—in IBP's master merchant account with Worldpay. (*Id.* ¶¶ 41, 50).

Between May 2020 and June 2020, each Sub-Merchant completed an IBP Merchant Application for card payment processing services with IBP. (*Id.* ¶ 44). Each IBP Merchant Application (1) incorporates by reference the IBP Terms of Service and (2) provides that the IBP Merchant Application and the IBP Terms of Service "together make up the Merchant Processing Agreement." (*Id.* ¶ 45).

The IBP Terms of Service is a document that consists of related agreements, including the IBP Sub-Merchant Agreement and the Merchant Services Agreement for Sub-Merchants. (*Id.*)

The IBP Sub-Merchant Agreement—part of the IBP Terms of Service and thus the Merchant Processing Agreement—states that IBP is acting in the capacity of a PayFac to provide the payment processing services that are the subject of the Merchant Processing Agreement. (*Id.* ¶ 47). Each Sub-Merchant and IBP are parties to the respective IBP Sub-Merchant Agreements. (*Id.* ¶¶ 54, 56).

The Merchant Services Agreement for Sub-Merchants—also part of the IBP Terms of Service and thus the Merchant Processing Agreement—are individual agreements between each Sub-Merchant, Worldpay, and Fifth Third. (*Id.* ¶¶ 48, 54-55, 59).

IBP, Worldpay, and Fifth Third opened a total of 43 unique merchant accounts ("MIDs") for the processing of Sub-Merchants' transactions.[8] (*Id.* ¶ 50). Each Merchant Processing Agreement—that, again, contains both an IBP Sub-Merchant Agreement and a Merchant Services Agreement for Sub-Merchants—became effective upon the creation of the MID in the name of each Sub-Merchant corresponding to each IBP Merchant Application, thereby signifying approval of the respective IBP Merchant Application and consent to the Merchant Processing Agreement. (*Id.* ¶ 49).

### d.  August 2020 to the Present

On August 24, 2020, Worldpay and Fifth Third shut down all 43 MIDs unique to Sub-Merchants, along with IBP's entire portfolio, without prior notice. (*Id.* ¶¶ 67, 76). Worldpay and Fifth Third shut down all 43 MIDs as part of Worldpay and Fifth Third's decision to terminate its relationship with IBP based on IBP's failure to abide by Worldpay and Fifth Third's underwriting guidelines. (*Id.* ¶ 70).

---

[8] The Court assumes that the 43 individual MIDs relate to 43 individual websites owned by the respective Sub-Merchants.

On August 26, 2020, Worldpay terminated its Payment Facilitator Merchant Agreement with IBP. (*Id.* ¶¶ 42, 70). Worldpay and Fifth Third then seized and held a total $2,700,000.00 in reserves from IBP's FBO Account (*i.e.*, an account held for the benefit of IBP's various sub-merchants, a group that includes more than just Sub-Merchants). (*Id.* ¶¶ 70, 108). As of August 26, 2020, proposed Counterclaim-Defendants were holding a total of $416,041.91 of Sub-Merchants' funds as reserves in a Merchant Reserve Account (*i.e.*, an account held for the benefit of only the Sub-Merchants in this case).[9] (*Id.* ¶ 77). Additionally, proposed Counterclaim-Defendants withheld approximately $1,140,296.68 in net proceeds from Sub-Merchants' processing activity from August 21, 2020 to August 25, 2020 ("Suspended Funds"), and added the Suspended Funds to the Merchant Reserve Account as additional reserves to further secure Sub-Merchants' alleged obligations to proposed Counterclaim-Defendants. (*Id.* ¶ 78).

Worldpay deregistered IBP as a PayFac with Mastercard on December 2, 2020 and deregistered IBP as a PayFac with Visa on December 14, 2020. (*Id.* ¶ 42). Given IBP's lack of registration as a PayFac since those respective dates, Card Brand Rules prohibit IBP from having any access, directly or indirectly, to any account for funds due to a sub-merchant and/or funds withheld from a sub-merchant for chargebacks arising from, or related to, performance of a merchant agreement. (*Id.* ¶ 106). Given IBP's lack of registration as a PayFac since those respective dates, Card Brand Rules prohibit Worldpay and Fifth Third from assigning, or otherwise transferring proposed Counterclaim-Defendants' obligation to pay or reimburse Sub-Merchants to IBP and from

---

[9] Under each Merchant Processing Agreement—that, again, contains both an IBP Sub-Merchant Agreement and a Merchant Services Agreement for Sub-Merchants—the parties agreed that proposed Counterclaim-Defendants would deduct their agreed upon fees and withhold 10% of the transaction proceeds as rolling reserves to be maintained in a Merchant Reserve Account. (*Id.* ¶ 51).

waiving, forgiving, releasing, assigning, or failing to insist on strict performance of these requirements. (*Id.* ¶ 107). Nevertheless, between December 7, 2020 and January 31, 2021—after IBP's de-registration as a PayFac—Worldpay and Fifth Third transferred a total of $1,831,000.00, of the $2,700,000.00 in reserves seized from IBP's FBO Account to IBP and retained a balance of $167,136.16 in IBP's FBO Account. (*Id.* ¶ 108). IBP has not paid Sub-Merchants any of these funds received from Worldpay and Fifth Third. (*Id.* ¶ 109).

Sub-Merchants allege that there is a remaining balance of $880,145.00 in net settlement proceeds due and owing to them for their processing activity with proposed Counterclaim-Defendants. (*Id.* ¶ 80).

### e. Current Lawsuit

IBP filed the Complaint in this matter in the Court of Common Pleas for Hamilton County, Ohio on February 26, 2021. (Doc. 3). The Complaint brings two claims: breach of contract and declaratory judgment. (*Id.*) IBP alleges that it is an Independent Sales Organization that, in September 2019, obtained a registered PayFac under Worldpay and Fifth Third to aggregate payment transactions from sub-merchants, including Sub-Merchants. (*Id.* ¶¶ 19-21). IBP alleges that, in August 2020, Worldpay determined that suspicious activity was occurring on IBP's master merchant account with Worldpay and Fifth Third due to the Sub-Merchants' activities, and not due to IBP's actions. (*Id.* ¶¶ 24-25). IBP alleges that Sub-Merchants violated the respective Merchant Services Agreement for Sub-Merchants and requests a declaration of rights under the various contracts in this matter. (*Id.* ¶¶ 32-37, 38-41).

Sub-Merchants and Stagnitto filed an Answer to IBP's Complaint, a Counterclaim against IBP, and a Crossclaim against Worldpay and Fifth Third. (Doc. 2). With respect to the Counterclaim against IBP, Sub-Merchants and Stagnitto bring six claims: breach of implied covenant of good faith and fair dealing, conversion, money had and received (constructive trust), violation of California Penal Code Section 496, and two counterclaims of breach of contract. (*Id.* Counterclaim PageID 69-96 ¶¶ 1-138). With respect to the Crossclaim against Worldpay and Fifth Third, Sub-Merchants bring four claims: breach of contract, breach of implied covenant of good faith and fair dealing, conversion, and money had and received (constructive trust). (*Id.* Crossclaim PageID 96-100 ¶¶ 139-63).

In response, IBP filed an Answer to the Counterclaim. (Doc. 27). Worldpay and Fifth Third filed a Motion to Dismiss the Crossclaim. (Doc. 26). Sub-Merchants and Stagnitto, in response to the Motion to Dismiss, filed their First Motion for Leave to File an Amended Counterclaim (Doc. 51). Sub-Merchants and Stagnitto subsequently filed the Second Motion for Leave to File an Amended Counterclaim. (Doc. 84).

In the instant motion, Sub-Merchants and Stagnitto propose nine counterclaims against IBP, Raymond Zak,[10] and SimplePay,[11] and Sub-Merchants propose five counterclaims against Worldpay and Fifth Third. (Doc. 84-1). The nine proposed counterclaims against IBP, Mr. Zak, and SimplePay are breach of implied covenant of good faith and fair dealing, conversion, violation of California Penal Code Section 496, piercing the corporate veil or alter ego, civil conspiracy, two counterclaims of breach of contract, and two counterclaims of money had and received (constructive trust). (*Id.*) The

---

[10] Mr. Zak is the organizer and sole member of IBP. (Doc. 84-1 ¶ 116).

[11] SimplePay was incorporated in April 2021, and Mr. Zak is the sole shareholder of SimplePay. (*Id.* ¶ 117).

five proposed counterclaims against Worldpay and Fifth Third are breach of contract, breach of implied covenant of good faith and fair dealing, conversion, money had and received (constructive trust), and civil conspiracy. (*Id.*) Specifically as to the proposed counterclaims against Worldpay and Fifth Third, Sub-Merchants explain their theory of the case as:

> Fifth Third/Worldpay held Sub-Merchants' funds in their possession, but instead of delivering them to Sub-Merchants, delivered them to IBP, who, in turn, similarly refused to deliver them to Sub-Merchants; in so doing, both IBP and Fifth Third/Worldpay breached specific contractual agreements, committed conversion, incurred liability for money had and received, and engaged in a civil conspiracy . . . These claims all pertain to the same distinct funds – the $880,439.40 on deposit in a specific bank account that belonged to Sub-Merchants. It is alleged that either, or both, of these sets of defendants are liable to Sub-Merchants for these funds.

(Doc. 87 PageID 2511-12).[12]

Worldpay and Fifth Third respond that the proposed Counterclaim fails on futility grounds, as that the proposed counterclaims fail to state claims against Worldpay and Fifth Third as a matter of law. (Doc. 85 PageID 2486-94); *see* (Doc. 26 PageID 828-31).[13] Worldpay and Fifth Third also argue that they have not been joined properly. (Doc. 85 PageID 2485-86).

## II.  ANALYSIS

### a.  Standard of Review

Federal Rule of Civil Procedure ("Rule") 15 governs amendments to, *inter alia*, counterclaims and provides that, before trial, "a party may amend its pleading only with

---

[12] *But see* (Doc. 84-1 ¶ 80) (alleging that there is a remaining balance of $880,145.00 due to Sub-Merchants).

[13] Worldpay and Fifth Third incorporate arguments regarding two proposed counterclaims from their previously filed Motion to Dismiss. (Doc. 85 PageID 2494). Assuming without deciding that such incorporation is proper, in future filings, it is not preferable.

the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); *accord* FED. R. CIV. P. 13, ADV. COMM. NOTES, 2009 AMENDMENT ("An amendment to add a counterclaim will be governed by Rule 15."). The Court may consider a number of factors in determining whether to grant leave to amend under Rule 15(a)(2). Those factors may include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). A court need not grant leave to amend where amendment would be futile. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Foman*, 371 U.S. at 182). "Amendment of a [counterclaim] is futile when the proposed amendment would not permit the [counterclaim] to survive a motion to dismiss." *Id.* (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

At the motion to dismiss stage, a "[c]ounterclaim is held to the same pleading standard that applies to a Complaint." *BMG Sports, LLC*, 2022 WL 345178, at *1 (citing *Am. City Bus. Journals, Inc. v. Parshall*, No. 2:17-cv-596, 2018 WL 4599843, at *1 (S.D. Ohio Sept. 25, 2018)). Accordingly, at the motion to dismiss stage, a counterclaim must "state[ ] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345-46 (6th Cir. 2016)). To withstand a motion to dismiss, a counterclaim must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

10

(2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"A [counter]claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A counterclaim is insufficient if it only offers assertions without any "further factual enhancement[s]" to support the claim. *Twombly*, 550 U.S. at 557. A district court examining the sufficiency of a counterclaim must accept the well-pleaded allegations of the counterclaim as true, *Iqbal*, 556 U.S. at 678, and "construe the [counterclaim] in the light most favorable to the [counterclaimant], accept its allegations as true, and draw all reasonable inferences in favor of the [counterclaimant]," *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted).

### b. Breach of Contract and of the Implied Covenant of Good Faith and Fair Dealing

Worldpay and Fifth Third argue that allowing an amendment to include a breach of contract counterclaim on the theory of the existence of direct contracts would be futile because there are no Merchant Services Agreement for Sub-Merchants contracts between each Sub-Merchant, Worldpay, and Fifth Third, as such contracts are conditional and Sub-Merchants do not allege that they satisfied their portion of the conditions. (Doc. 85 PageID 2483-84, 2489-90). Worldpay and Fifth Third also assert that there are no signed copies of the alleged contracts attached to the proposed Counterclaim and Sub-Merchants fail to cite a contract provision that incorporates the Card Brand Rules

into the alleged contracts. (*Id.* PageID 2490-91).

In Ohio,[14] "[t]o establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, ¶ 28 (Ohio Ct. App. 2018)). "In evaluating breach of contract claims at the Motion to Dismiss stage, . . . the complaint or counterclaim must provide 'further explanation, including the relevant terms of the agreement, how the agreement was breached, and how the breach harmed the non-moving party.'" *BMG Sports, LLC*, 2022 WL 345178, at *11 (quoting *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 954 (6th Cir. 2014)).

Regarding element one, the existence of a contract, Sub-Merchants allege that, between May 2020 and June 2020, each Sub-Merchant completed an IBP Merchant Application to obtain credit and debit card payment processing services from IBP. (Doc. 84-1 ¶ 44). Sub-Merchants allege that each IBP Merchant Application (1) incorporates by reference the IBP Terms of Service and (2) provides that the IBP Merchant Application and the IBP Terms of Service "together make up the Merchant Processing Agreement." (*Id.* ¶ 45). Sub-Merchants allege that the Merchant Services Agreement for Sub-Merchants is part of the IBP Terms of Service and, thus, is also part of the Merchant Processing Agreement, and are individual agreements between and each Sub-Merchant, Worldpay, and Fifth Third. (*Id.* ¶¶ 48, 54-55, 59). Sub-Merchants allege that each Sub-Merchant's contract with IBP, *i.e.*, each IBP Merchant Application, required

---

[14] The attached copy of the Merchant Services Agreement for Sub-Merchants provides that it shall be construed in accordance with Ohio law. (Doc. 84-1 Exh. B. PageID 2408).

Sub-Merchants to enter into a Merchant Services Agreement for Sub-Merchants with IBP's acquirer/acquiring bank, *i.e.*, Worldpay and Fifth Third. *See* (*Id.* ¶ 44); (*Id.* Ex. A PageID 2176-2391) (IBP Merchant Applications and Merchant Reserve Acknowledgements between each of the Sub-Merchants and IBP); (*Id.* Ex. B PageID 2392-2408) (copy of the IBP Terms of Service).

Worldpay and Fifth Third contend that the individual Merchant Services Agreement for Sub-Merchants contracts are conditional due to language found in the introductory paragraph of those contracts:

> This MERCHANT SERVICES AGREEMENT FOR SUB-MERCHANTS ("Sub-Merchant Agreement") is made among Vantiv, LLC, and its designated Member Bank (collectively "Acquirer") and _____ ("Sub-merchant") in connection with the Agreement between Sub-merchant and Integrity Business Partners Network, Inc. ("Provider"). Acquirer will provide Sub-merchant with certain payment processing services ("Services") in accordance with the terms of this Sub-Merchant Agreement. In consideration of Sub-merchant's receipt of credit or debit card funded payments, and participation in programs affiliated with MasterCard International Inc. ("MasterCard"), VISA U.S.A. Inc. ("VISA"), Discover ("Discover"), and certain similar entities (collectively, "Associations), Sub-merchant is required to comply with the Operating Regulations (defined below) as they pertain to applicable credit and debit card payments. **In addition, if Sub-merchant meets certain requirements under the Operating Regulations or an Association or the Operating Regulations otherwise require, Sub-merchant may be required to enter into a direct relationship with an entity that is a member of the Associations. By executing this Sub-Merchant Agreement, Sub-merchant has fulfilled such requirement.** However, Acquirer understands that Sub-merchant may have contracted with Provider to obtain certain processing services and that Provider may have agreed to be responsible to Sub-merchant for all or part of Sub-merchant's obligations contained herein.

(*Id.* Ex. B. PageID 2407) (emphasis added); *accord* (Doc. 85 PageID 2489-90). Worldpay and Fifth Third argue that Sub-Merchants do not allege that "the certain requirements under the Operating Regulations" were met. (Doc. 85 PageID 2489-90).

Worldpay and Fifth Third's argument, however, ignores Section 4 of the Merchant Services Agreement for Sub-Merchants which reads:

> **Term and Termination.** This Sub-Merchant Agreement shall be binding upon Sub-merchant upon Sub-merchant's execution. The term of this Sub-Merchant Agreement shall begin, and the terms of the Sub-Merchant Agreement shall be deemed accepted and binding upon Acquirer, on the date Acquirer accepts this Sub-Merchant Agreement by issuing a merchant identification number, and shall be coterminous with Provider's Agreement with Sub-merchant[.]

(Doc. 84-1 Ex. B PageID 2407). At this juncture, and reviewing the entire contract, the Court reads the portion of the introductory paragraph that Worldpay and Fifth Third rely on to mean that, under certain circumstances, the Card Brand Rules may require an individual Sub-Merchant to enter into a certain type of direct relationship, and that, to the extent that requirement become applicable, the Merchant Services Agreement for Sub-Merchants would satisfy the requirement. The Court reads Section 4 of the Merchant Services Agreement for Sub-Merchants, at this time, as controlling when each Merchant Services Agreement for Sub-Merchants goes into effect. Sub-Merchants sufficiently allege that the individual Merchant Services Agreement for Sub-Merchants took effect when each Sub-Merchant completed his or her IBP Merchant Application and transmitted customer transaction receipts for payment processing and when IBP, Worldpay, and Fifth Third opened the unique MIDs for the processing of Sub-Merchants' transactions. (*Id.* ¶¶ 44, 50, 79); (*id.* Ex. B PageID 2407-08).

Regarding element two, performance by the plaintiff, Sub-Merchants adequately allege that they each performed under the respective contracts by transmitting transaction receipts for card payment processing and paying fees to Worldpay and Fifth in exchange for such services. *See, e.g.*, (*Id.* ¶¶ 60, 79, 80).

Regarding element three, breach by the defendant, Sub-Merchants sufficiently allege that Worldpay and Fifth Third breached each Merchant Services Agreement for Sub-Merchants by allowing IBP to access and handle Sub-Merchant funds, and perform other PayFac services in support of Worldpay and Fifth Third, after IBP lacked registration as a PayFac, in direct contravention of certain provisions of the Card Brand Rules. (*Id.* ¶¶ 62, 104-110, 114, 196).

To the extent that Worldpay and Fifth Third fault Sub-Merchants for failing to cite a provision of that contract that incorporates the Card Brand Rules, the contract expressly requires Sub-Merchants to comply with "the Operating Regulations" "as th[ose Operating Regulations] pertain to applicable credit and debit card payments" and provides that, "[i]n the event that Sub-merchant has any claim arising in connection with the Services, rights, and/or obligations defined in this Sub-Merchant Agreement, Sub-merchant shall proceed against Provider and not against Acquirer, unless otherwise specifically set forth in the Operating Regulations." (*Id.* Ex. B PageID 2407-08). The contract defines "Operating Regulations" as " the Association's[15] and other payment network's by-laws, operating regulations and/or all other rules, policies and procedures." (*Id.* PageID 2407). And the proposed Counterclaim includes Card Brand Rules that Sub-Merchants allege Worldpay and Fifth Third violated. (*Id.* ¶¶ 63-64, 77, 107, 111, 113). This suffices.

Regarding element four, damages or loss resulting from the breach, Sub-Merchants allege that, as a direct and proximate result of Worldpay and Fifth Third's breaches of their contractual obligations to Sub-Merchants, Sub-Merchants have collectively suffered in excess of $880,145.00 in damages. (*Id.* ¶ 197).

---

[15] That contract defines "Associations" as "MasterCard International Inc. ('MasterCard'), VISA U.S.A. Inc. ('VISA'), Discover ('Discover'), and certain similar entities." (Doc. 84-1 Exh. B PageID 2407).

In sum, with respect to Sub-Merchants' breach of contract counterclaim, based on the theory of individual direct contracts, Sub-Merchants provide sufficient allegations to support their breach of contract counterclaim at this juncture and amendment would not be futile. Similarly, and because Worldpay and Fifth Third's only argument regarding the futility of Sub-Merchants' proposed breach of the implied covenant of good faith and fair dealing counterclaim hinges on the success of their breach of contract argument (Doc. 85 PageID 2491), the Court finds in favor of Sub-Merchants on that proposed counterclaim at this juncture, too.

Sub-Merchants do not respond to Worldpay and Fifth Third's argument regarding the futility of Sub-Merchants' proposed breach of contract counterclaim based on the theory of being an intended third-party beneficiary. (Doc. 87). The Court, for the reasons stated in Worldpay and Fifth Third's Response, finds in favor of Worldpay and Fifth Third as to the futility of Sub-Merchants' proposed breach of contract counterclaim based on the third-party beneficiary theory. (Doc. 85 PageID 2491-93).

### c. Conversion

Worldpay and Fifth Third contend that amendment to permit Sub-Merchants' proposed conversion counterclaim would be futile because it is based on the same allegations as the proposed breach of contract counterclaim, and a counterclaim for conversion cannot be made based on the same allegations as counterclaim for breach of contract. (Doc. 26 PageID 828-30); (Doc. 85 PageID 2494). Sub-Merchants respond that they properly allege that Worldpay and Fifth Third breached a duty independent of their contractual duty to Sub-Merchants. (Doc. 84-1 ¶ 210); (Doc. 87 PageID 2521-22).

In Ohio,[16] "the elements of a conversion claim include (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, ¶ 28, 62 N.E.3d 928, 934. "Ohio law does not permit the repackaging of contract claims as tort actions." *Mitri v. Rahma*, No. 4:18-CV-2258, 2019 WL 6771153, at *5 (N.D. Ohio Dec. 12, 2019) (citing *Nichols v. Chicago Title Ins. Co.*, 107 Ohio App. 3d 684, 696, 669 N.E.2d 323, 332 (1995)). "Where the duties imposed upon the parties are governed by contract, then contract law governs the recovery." *Id.* (citing *Clevenger v. Dillard's Dep't Stores, Inc.*, No. 1:02-cv-558, 2007 WL 2902933, at *27 (S.D. Ohio Oct. 2, 2007)).

A review of Sub-Merchants' proposed breach of contract counterclaim, based on the individual Merchant Services Agreement for Sub-Merchants discussed above, and the proposed conversion counterclaim, reveals that the conversion counterclaim is based on the same allegations as the breach of contract counterclaim. *Compare* (Doc. 84-1 ¶¶ 189-98), *with* (*id.* ¶¶ 205-13). Although Sub-Merchants allege that Worldpay and Fifth Third had a duty independent of any contractual duty to not dispose of the net settlement proceeds held for Sub-Merchants' benefit, (*id.* ¶ 210); *see* (Doc. 87 PageID 2521-22), the Court finds this allegation to be an impermissible assertion without any "further factual enhancement[s]" to support the counterclaim, particularly in light of the Court's holding regarding the futility of Sub-Merchants' third-party beneficiary argument. *Twombly*, 550 U.S. at 557.

---

[16] As the Court's jurisdiction is based on diversity of citizenship, the Court must apply the substantive law of the forum state. *Erie v. Tompkins*, 304 U.S. 64 (1938); *Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983) (per curiam).

In sum, Ohio contract law, and not a counterclaim for conversion, governs Sub-Merchants' attempt to recover the funds that derive from the individual Merchant Services Agreement for Sub-Merchants between each Sub-Merchant, Worldpay, and Fifth Third. *See Mitri*, 2019 WL 6771153, at \*5 (citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) (recognizing that "a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed[]")).

### d. Money Had and Received (Constructive Trust)

Worldpay and Fifth Third assert that amendment to allow Sub-Merchants' proposed money had and received (constructive trust) counterclaim[17] would be futile as Sub-Merchants have an adequate remedy at law to attempt to recover the funds and, thus, the equitable request fails as a matter of law. (Doc. 26 PageID 830-31); (Doc. 85 PageID 2494). Sub-Merchants respond that this proposed counterclaim is properly plead in the alternative to the proposed breach of contract counterclaim. (Doc. 87 PageID 2526).

"Essentially, Ohio courts will use the remedy of constructive trust 'where there is some ground . . . upon which equity will grant relief.'" *In re Morris*, 260 F.3d 654, 668 (6th Cir. 2001) (quoting *Henkle v. Henkle*, 75 Ohio App. 3d 732, 738, 600 N.E.2d 791, 795 (1991)). Similar to the Court's analysis on the proposed conversion counterclaim, Ohio law does not allow parties to seek damages under quasi-contractual theories of recovery when a contract governs the relationship. *Cook v. Home Depot U.S.A., Inc.*,

---

[17] Although Sub-Merchants frame their request for the imposition of a constructive trust as a counterclaim, "there is no stand-alone claim for constructive trust; instead it is a remedy." *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, 311 F. App'x 814, 817 (6th Cir. 2009).

No. 2:06-CV-00571, 2007 WL 710220, at *8 (S.D. Ohio Mar. 6, 2007) (cleaned up). Sub-Merchants concede as such with respect to their request for the imposition of a constructive trust. (Doc. 87 PageID 2526). Sub-Merchants' request for a constructive trust essentially replicates the crux of their proposed breach of contract counterclaim. *Compare* (Doc. 84-1 ¶¶ 189-98), *with* (*id.* ¶¶ 214-17). As the Court will permit Sub-Merchants' proposed breach of contract counterclaim to proceed forward on the direct contract theory, Sub-Merchants' request for the equitable remedy of a constructive trust fails as a matter of law and amendment would thus be futile. *See Cook*, 2007 WL 710220, at *8.

### e. Civil Conspiracy

Worldpay and Fifth Third argue that certain allegations underlying Sub-Merchants' proposed civil conspiracy counterclaim—that Worldpay and Fifth Third knew that IBP had not paid Sub-Merchants before releasing the contested funds to IBP and released the funds anyway—contradict Sub-Merchants' counsel's statements made to the Court during oral argument for Sub-Merchants' Motion for Preliminary Injunction against IBP—that Worldpay and Fifth Third released the funds to IBP due to IBP's misrepresentation to Worldpay that IBP had already paid the Sub-Merchants. (Doc. 85 PageID 2487-89). Sub-Merchants respond "that IBP may have misrepresented to Fifth Third/Worldpay that [IBP] had already paid Sub-Merchants is inapposite," because IBP's "misrepresentation does not obviate the wrongfulness of Fifth Third/Worldpay's transfer of Sub-Merchants' settlement funds to a deregistered PayFac" and "Fifth Third/Worldpay did not verify IBP's misrepresentation with Sub-Merchants prior to disbursing the funds." (Doc. 87 PageID 2525).

To establish a claim of civil conspiracy under Ohio law, a plaintiff must prove: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 538 (6th Cir. 2000) (citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 629 N.E.2d 28, 33. In the proposed civil conspiracy counterclaim, Sub-Merchants and Stagnitto allege that IBP, SimplePay, Zak, Worldpay, and Fifth Third entered into a malicious combination with the understanding, intention, and/or design to commit the underlying tortious acts of conversion against Sub-Merchants and Stagnitto when Worldpay and Fifth Third entered into an agreement with IBP to transfer Sub-Merchants' funds to IBP after Worldpay and Fifth Third had already begun deregistering IBP as a PayFac. (Doc. 84-1 ¶¶ 218-26).

Sub-Merchants' current assertion that "that IBP *may have* misrepresented to Fifth Third/Worldpay that [IBP] had already paid Sub-Merchants" certainly differs from Sub-Merchants' counsel's statement, made to the Court during oral argument for injunctive relief, that "the funds were held in an FBO account for the benefit of the sub-merchants and were then subsequently released to IBP based on its misrepresentation to WorldPay that it had already pre-funded, *i.e.*, paid, all the sub-merchants to whom it owed funds." *Compare* (Doc. 87 PageID 2525) (emphasis added), *with* (Doc. 54 PageID 1664) (Transcript of June 4, 2021 oral argument). Regardless, and restricting the Court's analysis to the allegations in the proposed Counterclaim, because the Court will deny leave to amend to add a conversion counterclaim, conversion may not form the basis for the conspiracy counterclaim. *See NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 83 (S.D. Ohio 1996); *see also OnX USA LLC v. Sciacchetano*, No. 1:11CV2523, 2012

WL 2191206, at *3 (N.D. Ohio June 14, 2012) (refusing to perform an "analysis . . . requir[ing] consideration of matters outside the pleadings" because that would "draw[ ] the court beyond the bounds of inquiry required by a motion to amend"). Accordingly, and as conversion is the only asserted underlying basis for the conspiracy counterclaim, amendment to add the conspiracy counterclaim is improper as a matter of law and futile. *See NPF IV, Inc.*, 922 F. Supp. at 83.

### f. Joinder of Worldpay and Fifth Third

Worldpay and Fifth Third also maintain that they have not been joined properly as parties and the proposed Counterclaim is procedurally futile. (Doc. 85 PageID 2485-86). Worldpay and Fifth Third contend that Sub-Merchants cannot use Rules 13 and 20 to join WorldPay and Fifth Third to this case with respect to the proposed breach of contract and the breach of the implied covenant of good faith and fair dealing counterclaims[18] because Sub-Merchants bring those counterclaims solely against Worldpay and Fifth Third and not also against IBP, *i.e.,* the only prior-existing party to this case. (*Id.*)

All of the procedural engineering initiated by Sub-Merchants and Stagnitto notwithstanding—initially bringing "crossclaims" against Worldpay and Fifth Third (Doc. 3); then filing a First Motion for Leave to File an Amended Counterclaim against Worldpay and Fifth Third (Doc. 51); and now filing the instant Second Motion for Leave to File an Amended Counterclaim against Worldpay and Fifth Third (Doc. 84)—it appears that the appropriate method to try to join Worldpay and Fifth Third in this matter would have been a Rule 13(h) motion to join additional parties to a counterclaim under Rule 19 or 20. *See Lexington Streetsboro, LLC v. Geis*, No. 5:07CV02450, 2008 WL 5723491, at

---

[18] The Court amends Worldpay and Fifth Third's argument to account for the Court's holdings in this Opinion & Order thus far.

*5 (N.D. Ohio Feb. 22, 2008). Sub-Merchants and Stagnitto make no such motion. However, their Second Motion for Leave to File an Amended Counterclaim references Rules 13 and 20. (Doc. 84 PageID 2121). "Accordingly, under the circumstances, to avoid needless delay to permit the formal filing of a Rule 13(h) motion, the Court construes the motion for leave to amend as a motion to join additional parties to the proposed [C]ounterclaim." *Lexington Streetsboro, LLC*, 2008 WL 5723491, at *5; *cf. Lindsey v. Udeozo*, No. CV115DV01117JDBEGB, 2015 WL 7681253, at *3 (W.D. Tenn. Nov. 24, 2015) ("The mere fact that the Estate mischaracterized its proper counterclaim again K & S as a crossclaim should not result in a dismissal for such a technical flaw.").

Generally, under the Federal Rules of Civil Procedure, the rights of all parties should be adjudicated in one action. *Lexington Streetsboro, LLC*, 2008 WL 5723491, at at *6 (citing *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 146 (6th Cir. 1969)). A person or entity who is not an original party in an action may be joined to the action by one of the existing parties. Rule 13 governs counterclaims and crossclaims, and provides that "Rules 19[19] and 20 govern the addition of a person as a party to a counterclaim or crossclaim." FED. R. CIV. P. 13(h). Rule 20, in turn, governs permissive joinder of parties and provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2).

---

[19] As neither party makes any arguments regarding whether joinder of Worldpay and Fifth Third is appropriate under Rule 19, which governs the required joined of parties, the Court's analysis will focus only on the propriety of joinder under Rule 20.

Rules 13 and 20 are remedial in nature and are to be construed liberally in the interests of convenience and judicial economy. *Lexington Streetsboro, LLC*, 2008 WL 5723491, at *6.

Because Sub-Merchants' proposed Counterclaim includes counterclaims simultaneously against IBP, a party to the original action, Rule 13(h) allows the assertion of counterclaims against non-parties such as Worldpay and Fifth Third. *See Lexington Streetsboro, LLC*, 2008 WL 5723491, at *6. Sub-Merchants' proposed breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims arise out of the same series of transactions or occurrences as IBP's claims, and the proposed breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims against Worldpay and Fifth Third arise out of the same series of transactions or occurrences as the proposed counterclaims against IBP. *See* FED. R. CIV. P. 20(a)(2)(A). Likewise, questions of law and fact common to IBP, Worldpay, and Fifth Third will arise in the prosecution of the proposed counterclaims. *See id.* Accordingly, as Rule 20(a)(2)'s transactional or occurrence relatedness and commonality requirements are satisfied, the question becomes whether "any right to relief is asserted against" Worldpay and Fifth Third "jointly, severally, or in the alternative." *Id.*

Sub-Merchants' proposed breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims do not request relief jointly and severally. *Compare* (Doc. 84-1 ¶¶ 125-36, 137-47), *with* (Doc. 84-1 ¶¶ 189-98, 199-204). However, Sub-Merchants assert alternative breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims against IBP, SimplePay, and Zak on one hand and Worldpay and Fifth Third on the other hand. *See Tinsley v. Streich*, 143 F. Supp. 3d

450, 459 (W.D. Va. 2015) ("Under both the Virginia and federal rules for permissive joinder of parties, a plaintiff may join several defendants in one action if any right of relief the plaintiff asserts against the defendants, in the alternative, arises out of the same transaction or occurrence." (citing FED. R. CIV. P. 20(a)(2)(A))); *cf. NatureSweet, Ltd. v. Mastronardi Produce, Ltd.*, No. 3:12-CV-1424-G, 2013 WL 460068, at *3 (N.D. Tex. Feb. 6, 2013); *compare* (Doc. 84-1 ¶¶ 125-36, 137-47), *with* (Doc. 84-1 ¶¶ 189-98, 199-204). As Rule 20 only mandates that "any right" to relief meet this requirement, Worldpay and Fifth Third are properly joined as parties to this action through the proposed breach of contract counterclaim. Sub-Merchants and Stagnitto may then bring their proposed breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims against Worldpay and Fifth Third, as Worldpay and Fifth Third have been properly joined.

## III. **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Sub-Merchants and Stagnitto's Second Motion for Leave to File an Amended Counterclaim (Doc. 84) is **DENIED in part—**with respect to the breach of contract counterclaim based on the theory of being a third-party beneficiary, the conversion counterclaim, the money had and received (constructive trust) request for relief, and the civil conspiracy counterclaim against Worldpay and Fifth Third**—and GRANTED in part**, with respect to all of its counterclaims against IBP, SimplePay, and Zak, and also the breach of contract counterclaim based on the direct contract theory and the breach of implied covenant of good faith and fair dealing counterclaim against Worldpay and Fifth Third. Sub-Merchants and Stagnitto **SHALL** file an Answer with an Amended Counterclaim that complies with

this Order within seven (7) days of the date of the issuance of this Order.[20] It is further **ORDERED** that Sub-Merchants and Stagnitto's First Motion for Leave to File an Amended Counterclaim (Doc. 51) and Worldpay and Fifth Third's Motion to Dismiss Crossclaims (Doc. 26) are **both DENIED as moot**.

 The Court will address the remaining pending motions in this case (Docs. 21, 24, 63) by separate order.

 **IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　_/s Michael R. Barrett_____
　　　　　　　　　　　　　　　　　　　　Michael R. Barrett, Judge
　　　　　　　　　　　　　　　　　　　　United States District Court

---

[20] Sub-Merchants shall replead their Answer (Doc. 2 PageID 59-69) as is and change their Proposed Counterclaim (Doc. 84-1) to conform to this Order, as Rule 13 requires permissive counterclaims to be set forth in a pleading. FED. R. CIV. P. 13(b).